IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


SHERRY F. ROBERTSON,

                  Plaintiff,

    v.

STANDARD INSURANCE COMPANY,

               Defendant.

No. 3:14-cv-01572-HZ

OPINION & ORDER


Michael D. Grabhorn
GRABHORN LAW OFFICE, PLLC
2525 Nelson Miller Parkway, Suite 107
Louisville, KY 40223

John C. Shaw
Megan E. Glor
MEGAN E. GLOR ATTORNEYS AT LAW
621 SW Morrison St., Suite 900
Portland, OR 97205

      Attorneys for Plaintiff

Andrew M. Altschul
BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
321 SW 4th Ave., Suite 600
Portland, OR 97204

Jacqueline J. Herring
Warren Sebastian von Schleicher
SMITTH, VON SCHLEICHER & ASSOCIATES
180 N. LaSalle St., Suite 3130
Chicago, IL 60601

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff, Sherry F. Robertson, seeks legal and equitable damages from Defendant,

Standard Insurance Company, under the Employee Retirement Income Security Act of 1974

(ERISA), 29 U.S.C. § 1001 <u>et seq.</u> Plaintiff received long-term disability (LTD) insurance

benefits and a waiver-of-premium of a life insurance policy benefit from Defendant from

September 4, 2012 through October 18, 2013. The question presented is whether Plaintiff was

entitled to continued benefits from October 18, 2013 until such time as Plaintiff is no longer

disabled or reaches the maximum benefit period. Defendant contends that Plaintiff's benefits

were properly terminated on October 18, 2013 because, as of that date, Plaintiff's condition was

no longer severe enough to meet the definition of disability under the LTD insurance policy.

Before the Court is Plaintiff's Motion for Judgment on the Record or, alternatively, Motion for

Summary Judgment. Plaintiff seeks retroactive reinstatement of her LTD benefits and waiver-of-

premium benefit. The Court finds that Defendant's termination of Plaintiff's benefits was an

abuse of discretion. Therefore, the Court grants Plaintiff's motion.

## BACKGROUND

      Plaintiff obtained long-term disability (LTD) insurance and life insurance as a benefit of

her employment as a cytogenetic technologist at Wake Forest University Health Sciences (Wake

Forest) in Winston-Salem, North Carolina. AR 00270-77.[1] Plaintiff's LTD insurance and life insurance policies are, and were, underwritten, issued, and administered by Defendant. Id.

## I.    Plaintiff's Insurance Policy Terms

Plaintiff's LTD insurance policy provides that Plaintiff is entitled to receive a monthly disability income benefit equal to 60% of her pre-disability earnings for the first 24 months during which LTD benefits are payable. AR 00013, 00018. During this period, the "Own Occupation period," Plaintiff must establish that she is "unable to perform with reasonable continuity the Material Duties of [her] own Occupation," and that she suffers "a loss of at least 20% in [her] Indexed Predisability Earnings when working in [her] Own Occupation." AR 00018. Defendant "may require proof of physical impairment that results from anatomical or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." AR 00031.

Plaintiff's life insurance policy provides for continuation of coverage without payment of premiums under a waiver-of-premium benefit if Plaintiff is "Totally Disabled," defined as the inability "to perform with reasonable continuity the material duties of any gainful occupation for which [she is] reasonably fitted by education, training, and experience." AR 00380. Plaintiff is entitled to receive continuation of coverage for the duration of her disability and until she attains age 65, without the obligation of remitting premiums. AR 00381.

## II.    Plaintiff's LTD Benefits Claim

Plaintiff stopped working on March 7, 2012 due to back and neck pain that had developed over time. AR 00277. Plaintiff had undergone multiple treatments such as medication, injections, physical therapy, massage therapy, and breast reduction surgery—all had minimal or

---

[1] Citations to "AR" are to the Administrative Record, ECF 21-2 to 21-12. Citations are to the last five digits of the Bates number beginning "STND 14-02406-_____."

no benefit. On March 9, 2012, Plaintiff underwent biacuplasty, a medical procedure that applies

heat to the annulus of disks that separate the vertebra. AR 00280**.** The procedure was

unsuccessful in alleviating her pain symptoms, which include a constant pain that travels into her

knees and ankles, making it painful to sit or stand. AR 00280, 555-57, 565.

On March 19, 2012, Plaintiff submitted a claim to Defendant for payment of disability

benefits. AR 00270. On August 15, 2012, Defendant approved Plaintiff's claim for long-term

disability benefits under the LTD plan, with payment beginning September 4, 2012.[2] AR 00013,

00035, 00133. On August 24, 2012, Defendant approved Plaintiff for continuation of life

insurance coverage under the life insurance plan's waiver-of-premium provision. AR 00120-22.

In addition, Defendant sent Plaintiff a letter on August 15, 2012, informing her that she

was required to pursue any deductible income for which she might be eligible, including Social

Security disability benefits. AR 00132. Defendant's letter informed Plaintiff of the following:

> Let us know if you are receiving or expect to receive other income in the future. If you
> have applied for other benefits, you must keep us up to date. You are required to provide
> us with copies or any award or denial notices, and notify us of the amount of deductible
> income when it is approved.

Id. Defendant referred Plaintiff's file to Allsup Inc. to pursue her Social Security claims. Id.

## III.    Plaintiff's Subsequent Medical Treatment

On October 12, 2012, Plaintiff underwent lumbar fusion surgery performed by Dr.

Charles Branch. AR 00539-40. Chart notes from follow-up examinations indicate that Plaintiff

continued to have back pain after the surgery. At Plaintiff's follow-up examination on November

13, 2012, Plaintiff reported "persistent back pain" although her leg pain had subsided. AR 00534.

She denied any numbness or weakness. Id.

---

[2] Defendant provided Plaintiff with short-term disability benefits until September 3, 2012, the day before
her long-term disability benefits began. AR 01690, 01731.

On November 15, 2012, Defendant requested that Plaintiff have Dr. Branch complete a
"Physician's Report-Musculoskeletal" to provide an update on Plaintiff's functional abilities.[3]
AR 00113. Dr. Branch filled out the report on January 9, 2013. AR 00742. In response to a
question about Plaintiff's anticipated return to work, Dr. Branch wrote: "do not forsee return date
in near future." AR 00740. He described Plaintiff's symptoms as "persistent back pain" and
stated that there were no assistive devices, worksite modifications, or suggestions to facilitate a
return to work. Id. Dr. Branch declined to fill out the report's functional capacity evaluation
(FCE) and, instead, wrote that Plaintiff needed a "formal functional capacity exam." AR 00741
(emphasis in original). Dr. Branch's Nurse Practitioner Karen Repass, referred Plaintiff for an
FCE at Wake Forest. AR 00492.

On January 16, 2013, Plaintiff had "persistent para spinous pain to the right of the
incision since surgery" which was "persistent with noted spasm." AR 00532. Her pain was
"greater with activity" and NP Repass noted that Plaintiff had to be sedentary. Id. On January 28,
2013, NP Repass provided a letter on Plaintiff's behalf, in which she stated:

> [Plaintiff] had a Posterior Lumbar Interbody Fusion at L3-L5 adjacent to a fusion at L5-
> S1 on 10-12-12. She is having back pain that is consistent with muscle spasm and
> inflammation consistent with her long standing pathology and recent fusion. She is
> unable to work related to these symptoms and we are recommended [sic] she pursue long
> term disability.

AR 00738.

On February 19, 2013, Gail Marion, PhD, provided a letter in support of Ms. Robertson's
claim for continuing disability benefits. In relevant part, Dr. Marion stated:

> [Plaintiff[ has been in my care for about 20 years. Due to her deteriorating conditions I
> have had to refer her to surgeons and have not been able to see her as regularly as I once
> did. Over the last few years a growing number of quite serious health problems have
> resulted in numerous surgeries and complications with unrelenting pain. Due to these

---

[3] Dr. Branch had noted in a pre-surgery examination on April 4, 2012 that Plaintiff was "unable to work
at any job" pending surgery. AR 00806.

severe conditions she has not been able to keep her job, she has had to sell her home and get help from family. She is seeking long term disability which I believe is her only recourse at this time.

AR 00739.

Doctors' notes from February and April 2013 indicate that Plaintiff's leg pain improved, but she had residual back pain. AR 00530. Plaintiff received trigger point and sacroiliac injections in February, March, and April 2013, and reported that the injections "helped a lot." AR 00475.

At Plaintiff's one-year post-surgery follow-up examination with Dr. Branch on October 2, 2013, Dr. Branch reported that Plaintiff was "doing well with reduction of leg pain but persistent back and hip pain." AR 00477. Dr. Branch wrote: "Given her improvement I hope that time will help resolve the residual symptoms." Id. Plaintiff's wound was "well healed," she looked "great," and the x-rays showed a "very satisfactory fusion construct." AR 00477-78.

## IV.    Social Security Administration Favorable Decision

Defendant referred Plaintiff's file to Allsup, Inc. for representation in Plaintiff's application for Social Security benefits. AR 00132. On June 2, 2013, the Social Security Administration (SSA) issued a "fully favorable" decision finding Plaintiff totally disabled as of January 28, 2011. AR 00328.

## V.    Review by Defendant's Contracted Physician Consultant John Hart, D.O.

On two occasions, Defendant sought a "file review" of Plaintiff's disability claim by independent contractor John Hart, D.O. First, on August 1, 2013, Dr. Hart reviewed Plaintiff's claim. AR 00569. Dr. Hart noted that Plaintiff had been approved for SSA benefits. AR 00569. However, Defendant did not provide Dr. Hart with any documents from the SSA, such as the SSA decision letter explaining the SSA's findings. Id. Dr. Hart was aware of Plaintiff's October

12, 2012 lumbar fusion, but wrote that he did not have the "postop notes from [Plaintiff's] neurosurgeon." AR 00570. Dr. Hart stated that he needed the notes in order to make a recommendation regarding whether Plaintiff was disabled. However, he also stated that, in his experience, "an individual is capable of returning to a sedentary-level occupation after a two-level fusion which resulted in a total of 3 levels fused by approximately 6 to 9 months postop." AR 00571.

Defendant provided Dr. Hart with additional medical records, including the "post op notes," and Dr. Hart reviewed Plaintiff's claim again on October 10, 2013. AR 00515. Dr. Hart opined that Plaintiff was capable of doing full-time sedentary-level activity without limitation or restrictions. Id. Dr. Hart's October 10, 2013 file review did not mention the SSA favorable decision, nor were any SSA documents included in the documents that Dr. Hart reviewed. Id.

## VI.    Termination of Plaintiff's LTD and Waiver-of-Premium Benefits

In an October 18, 2013 letter, Defendant notified Plaintiff that she no longer met the definition of disability under the LTD policy. AR 00056. Defendant closed Plaintiff's claim for LTD benefits as of the date of the letter.[4] Id. In reaching its decision to terminate Plaintiff's benefits, Defendant relied primarily on Dr. Hart's opinion. AR 00058.

Defendant's letter acknowledged that Plaintiff was receiving Social Security disability benefits. AR 00059. However, Defendant explained that "the fact that you have been awarded these other benefits in and of itself does not entitle you to LTD benefits." Id. Specifically, Defendant noted that the Social Security Administration reviews claims for ongoing eligibility no more frequently than once every three years, whereas Defendant evaluates claims on an "ongoing basis." Id. Defendant also distinguished its benefit program from the SSA benefits

---

[4] In closing Plaintiff's LTD claim, Defendant also ended Plaintiff's waiver-of-premium benefit for her life insurance policy. AR 00060.

program because "[i]n addition to your functional capacity, SSA may rely on factors unique to their program as key criteria for determining eligibility for benefits." Id. Defendant did not discuss the basis for the SSA's decision, nor did it distinguish any of the SSA's findings and conclusions from Dr. Hart's conclusion. Defendant concluded that Plaintiff's condition had improved enough to allow her to work in her "Own Occupation" on a full time basis. Id.

## VII.    Plaintiff's Appeal and Subsequent Action

On November 2, 2013, Plaintiff appealed the determination to close her claim. AR 00513-14. Plaintiff stated that she had ongoing back pain and that she was unable to sit for 15-20 minutes without an increase in pain. AR 00513. She explained that her former job required 5-6 hours of sitting while scanning at a microscope. Id. Plaintiff indicated that additional letters were forthcoming from Dr. Marion, Dr. Branch, and Dr. Kapural. Id.

On December 2, 2013, Wake Forest physical therapist Susan Gunn completed a Functional Capacity Evaluation (FCE) of Plaintiff, pursuant to NP Renpass' referral. AR 00492. The FCE took 88 minutes to complete. AR 00493. Ms. Gunn found that Plaintiff could sit "occasionally." Id. Notwithstanding this finding, Ms. Gunn found that Plaintiff was able to work an eight-hour day at the sedentary level as defined by the Dictionary of Occupational Titles, U.S. Department of Labor, 1991. AR 00492. The SSA defines sedentary work as work "that involves sitting." Social Security Ruling (SSR) 96-9p. [5] "Sitting would generally total about 6 hours of an 8-hour work day." Id. Ms. Gunn wrote that Plaintiff "exhibited symptom/disability

---

[5] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, [courts] give them some deference." Holohan v. Massanari, 246 F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

exaggeration," her test results represented "a voluntary effort to demonstrate a greater level of disability than is actually present," and her "true abilities [were] not known." AR 00492, 00494.

In a December 11, 2013 "Physician's Report-Musculoskeletal," Dr. Branch wrote in response to a question about Plaintiff's anticipated return to work: "N/A, unable to return to work." AR 00488. Dr. Branch wrote that Plaintiff's chronic low back pain presented a barrier to returning to work. Id.

On December 16, 2013, Plaintiff was examined by a Physician's Assistant at Wake Forest, who documented that Plaintiff described "constant aching and stabbing pain." AR 00503. The medical chart notes indicate that Plaintiff stated that the pain was aggravated by prolonged sitting and standing, and alleviated by resting in the supine position and medication. Id.

On December 18, 2013, Dr. Marion submitted another statement concerning Plaintiff's health, writing: "It is my medical opinion that [Plaintiff] is unable to work due to low back pain with radiation." AR 00502.

On January 3, 2014, NP Renpass wrote a letter on behalf of herself and Dr. Branch that stated that Plaintiff was "unable to sit, stand or walk for extended periods of time." AR 00509. NP Renpass wrote: "It is our medical opinion that she is unable to work and we continue to recommend she pursue long term disability." Id.

On January 31, 2014, Defendant sought an "Independent File Review" from two physician consultants—a psychiatrist and a pain medicine specialist—through Medical Evaluation Specialists (MES), a provider of independent medical examinations, peer reviews, bill reviews, and related services. AR 00170, 00441-51. Defendant provided MES with Plaintiff's medical records, stating that the file included "all medical records received by Standard to date." AR 00453.

On February 7, 2014, MES psychiatric consultant Dr. DuBois wrote:

The claimant does not have psychiatric diagnoses, either alone or in combination, which causes limitations or restrictions severe enough that she was precluded from performing the mental demands of her occupation on a full-time basis with reasonable continuity at any time from March 8, 2012, through the present.

AR 00457.

On February 10, 2014, MES consultant Dr. Fay Rim (the pain medicine specialist) found that, while Plaintiff has degenerative disc disease status post L3-S1 fusion, myofascial pain, and sacroiliac dysfunction, beginning on October 19, 2013, "there are no limitations and restrictions supported to preclude [Plaintiff] from performing her sedentary level occupation on a full-time basis with reasonable continuity." AR 00446. Dr. Rim relied on Ms. Gunn's December 2, 2013 FCE, which found that "claimant has symptom exaggeration and non-organic signs." AR 00446. The Court notes that Dr. Rim's opinion purports to be based on Ms. Gunn's FCE; however, the FCE took place almost two months after the date upon which Dr. Rim opined Plaintiff was no longer disabled. Id. Dr. Rim provided no support for her determination that Plaintiff was no longer disabled on October 19, 2013. Id. Dr. Rim's opinion did not mention Plaintiff's SSA disability award, nor did it indicate that any documents from SSA were included in the file that Dr. Rim reviewed.

On February 24, 2014, Defendant notified Plaintiff of the decision to uphold closure of her claim on appeal. Defendant's appeal denial letter made no mention of the favorable SSA decision. AR 00165-72. The denial relied on Dr. Rim's decision and Ms. Gunn's FCE. Id. The letter stated: "You stated you cannot sit for hours at a microscope, but the FCE showed you could perform sedentary level work and further there was symptom exaggeration during the testing." AR00170-71. The letter does not acknowledge that Ms. Gunn's FCE found that Plaintiff could only sit occasionally. AR 00494.

**STANDARDS**

Traditionally, summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). However,

> Traditional summary judgment principles have limited application in ERISA cases governed by the abuse of discretion standard. Where, as here, the abuse of discretion standard applies in an ERISA benefits denial case, a motion for summary judgment is, in most respects, merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.

Stephan v. Unum Life Ins. Co. of Am., 697 F.3d 917, 929–30 (9th Cir. 2012) (citations, quotation marks omitted). In addition, "judicial review of benefits determinations is limited to the administrative record—that is, the record upon which the plan administrator relied in making its benefits decision[.]" Id. at 930 (internal quotation marks omitted). "[W]hen a court must decide how much weight to give a conflict of interest under the abuse of discretion standard[,] ... the court may consider evidence outside the [administrative] record." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 970 (9th Cir. 2006) (en banc). In considering "evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest[,]" id., traditional rules of summary judgment apply, and "summary judgment may only be granted if after viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact." Stephan, 697 F.3d at 930 (internal quotation marks omitted). "[T]he decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise." Abatie, 458 F.3d at 970.

///

**DISCUSSION**

**I.      The Court applies "abuse of discretion" review.**

A denial of benefits by an ERISA plan administrator is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). The grant of discretion must be unambiguous. Abatie, 458 F.3d at 963.

Here, the LTD policy's "Allocation of Authority" clause provides that:

> Except for those functions which the Group Policy specifically reserves to the Policyholder or Employer, we have full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy.

AR 00033. The Ninth Circuit has concluded that this language is effective to confer discretion on a plan administrator. See Harris v. Standard Ins. Co., 320 F. App'x 583, 584 (9th Cir. 2009) (holding that nearly identical language in a contract between a plaintiff and Standard Insurance Company was "sufficient to warrant abuse of discretion review").

Nevertheless, Plaintiff argues that Defendant has failed to meet its burden to show that the discretionary authority was actually exercised by the named fiduciary. Plaintiff is correct that, while courts "defer to the decisions of plans in which their language grants discretionary authority, that deference applies only when the decision is made by the body vested with discretion." Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan, 349 F.3d 1098, 1105 (9th Cir. 2003). Plaintiff's argument fails, however, because she cites no legal authority for the proposition that Defendant is required to identify the names of the specific people under its legal employment and control who made the decision to deny Plaintiff's claim. As the Ninth Circuit stated in Jebian, the issue is whether the decision was made by the body vested with discretion. Id. The record supports the conclusion that Defendant exercised its

authority to decide Plaintiff's claim and Plaintiff produces no evidence to the contrary. Any argument that Defendant was not the body exercising discretionary authority is speculative and without support in the record. Accordingly, this Court finds that the appropriate standard of review is abuse of discretion.

In reviewing for an abuse of discretion, an ERISA plan administrator's decision "will not be disturbed if reasonable." Conkright v. Frommert, 559 U.S. 506, 521 (2010) (internal quotation marks omitted). This reasonableness standard requires deference to the administrator's benefits decision unless it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts on the record." Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. 2011) (internal quotation marks omitted); see also Tapley v. Locals 302 & 612 of Int'l Union of Operating Eng'rs-Emp'rs Constr. Indus. Ret. Plan 728 F.3d 1134, 1139 (9th Cir. 2013) (courts "equate the abuse of discretion standard with arbitrary and capricious review"). Under this standard, Defendant's interpretation of the plan language "is entitled to a high level of deference." Tapley, 728 F.3d at 1139 (internal quotation marks omitted).

Plaintiff argues that, even if the abuse of discretion standard is appropriate, the Court should review Defendant's decision with additional "skepticism" because of Defendant's "structural conflict of interest." Plaintiff argues that Defendant is operating under a conflict of interest because Defendant is both the funding source for Plaintiff's disability benefits and the administrator deciding whether to approve her claims (continue her benefits).

When "the insurer acts as both funding source and administrator[,]" there is a structural conflict of interest that "must be weighed as a factor in determining whether there is an abuse of discretion." Salomaa, 642 F.3d at 674 (internal quotation marks omitted). However, structural conflicts do not divest the administrator of his delegated discretion. Metro. Life Ins. Co. v.

Glenn, 554 U.S. 105, 115–16, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008). Rather, they weigh more

or less heavily as factors in the abuse of discretion calculus. Lee v. Kaiser Found. Health Plan

Long Term Disability Plan, 563 F. App'x 530, 530-31 (9th Cir. 2014) (citing Firestone, 489 U.S.

at 115); see also Abatie, 458 F.3d at 967 ("We read Firestone to require abuse of discretion

review whenever an ERISA plan grants discretion to the plan administrator, but a review

informed by the nature, extent, and effect on the decision-making process of any conflict of

interest that may appear in the record.").

   In Montour v. Hartford Life & Acc. Ins. Co, the Ninth Circuit provided guidance for

applying the abuse of discretion standard when there is a structural conflict of interest. 588 F.3d

623, 629–30 (9th Cir. 2009). A determination of whether a plan administrator abused its

discretion turns on a consideration of "numerous case-specific factors." Id. at 630. The reviewing

court must consider, as one of those factors, the existence of a conflict of interest and should

assign weight to the conflict of interest based on the apparent degree to which the conflict

improperly influenced the administrator's decision. Id. Other factors that "frequently arise" in

ERISA cases include: (1) the quality and quantity of medical evidence; (2) whether the plan

administrator subjected the claimant to an in-person medical evaluation or merely relied on a

paper review of the claimant's existing medical records; (3) whether the administrator provided

its independent experts with all of the relevant evidence; and (4) as applicable, whether the

administrator considered a contrary Social Security Administration ("SSA") disability

determination. Id. at 630. Courts are directed to "reach a decision as to whether discretion has

been abused by weighing and balancing [the] factors." Id.

   Here, Defendant does not dispute that it plays a dual role as claims administrator and

insurer. Accordingly, the more complex, multi-factor application of the abuse of discretion

standard of review is necessary. Defendant's structural conflict of interest "bears little weight . . .

absent evidence that it "tainted the entire administrative decisionmaking process." <u>Seleine v.

Fluor Corp. Long-Term Disability Plan</u>, 409 F. App'x 99, 100 (9th Cir. 2010).

**II.    The Court assigns little weight to Defendant's structural conflict of interest.**

Plaintiff argues that Defendant's structural conflict of interest tainted its decisionmaking

process and affected Plaintiff's claim in four ways: (1) Defendant's claims personnel are

intimately aware of and participate in the financial impact of claim decisions; (2) Defendant's

use of MES Solutions raises questions of accuracy and thoroughness; (3) Defendant's use of

consultant Dr. Hart raises questions of accuracy and thoroughness; and (4) Defendant knowingly

excluded evidence from its claim file. The Court is not persuaded that these factors improperly

influenced Defendant's decision.

**a.    "Walling off Claims"**

Plaintiff argues that Defendant was improperly influenced because its claims personnel

knew the amount of the reserve funds that Defendant had to set aside to pay Plaintiff's claim.[6]

The Court fails to see how this aspect of Defendant's claim processing system suggests

bias or inaccuracy of the claim decision. Plaintiff cites <u>Metro. Life Ins. Co. v. Glenn</u>, 554 U.S.

105, 117, 128 S. Ct. 2343, 2351, 171 L. Ed. 2d 299 (2008) for the proposition that an ERISA

insurer should "wall off claim administrators from those interested in firm finances." However,

Plaintiff fails to allege that claim administrators in this case were communicating with or

influenced by those "interested in firm finances." Nor does Plaintiff identify any evidence that

shows that Defendant's benefit decision was motivated by or influenced by the reserve amount.

---

[6] According to Plaintiff, once Plaintiff's claim was denied, the reserves would be released, thereby
generating profit for the insurer. Pl.'s Mot.11 (citing <u>Merrick v. Paul Revere Life Ins. Co.</u>, 594 F. Supp.
2d 1168 (D. Nev. 2008) for a discussion of the impact of reserves on disability insurer's profitability).

In sum, Plaintiff's allegation does not weigh in favor of a conclusion that Defendant abused its discretion.

**b.  MES Solutions consultants**

Plaintiff argues that Defendant's denial decision was unreasonable because it relied on biased consultants, contracted by MES Solutions, who conducted only a paper review of Plaintiff's file. According to Plaintiff, MES Solutions obtains the majority of its income from the insurance industry and sells medical opinions tailored and tracked for claim results favorable to the insurer. Accordingly, Plaintiff argues that this Court should assign minimal deference to the opinions of the MES consulting physicians.

Plaintiff submits various exhibits in support of its arguments. As stated above, judicial review is limited to the administrative record. Stephan, 697 F.3d at 930. However, in determining whether there is a conflict of interest, evidence outside of the administrative record can be considered. Abatie, 458 F.3d at 970. Such evidence is considered and weighed according to the "traditional rules of summary judgment." Nolan v. Heald College, 551 F.3d 1148, 1154 (9th Cir. 2009). Plaintiff submits a report that purportedly demonstrates that MES tracks the rate at which its consultants approve or disapprove of a claimant's disability claim. Pl. Mot. Ex. 2, ECF 31-2. Plaintiff also submits an "Overview" document that explains the process by which MES operates. Pl. Mot. Ex. 3, ECF 31-3. Additionally, Plaintiff submits the 120-page deposition transcript of former MES employee Alison Merriweather-Coleman, which was taken for use in a case (that did not involve any of the parties in this case) in the Circuit Court for the County of Macomb in Michigan. Pl.'s Reply Ex. 7, ECF 33-7.

Plaintiff states that MES does not disclose its consulting medical professionals' draft reports, MES's communications with these professionals, or internal procedural notes.

According to Plaintiff "[t]he only reasonable explanation for MES' refusal to disclose the documents is that it audits the draft reports to ensure the final product is acceptable to its insurer clients." Pl.'s Mot. 14. In other words, Plaintiff alleges that MES ensures that its "independent" reviews will yield satisfactory results to insurers, which would generally mean a high rate of denial of disability claims. Additionally, Plaintiff argues that MES' use of an electronic stamp for the physician's signature raises "serious credibility and reliability questions." Finally, Plaintiff points to portions of Ms. Merriweather-Coleman's deposition testimony that support Plaintiff's allegation that MES tailors its disability reviews for its insurer clients.

The Court does not doubt that an insurance company, in some cases, could choose to use an outside agency such as MES in order to avoid a risk of the conclusion that a claimant is entitled to benefits. See, e.g., Salomaa, 642 F.3d at 676. However, this general acknowledgment of the possibility of improper behavior is insufficient to find that, in this case, Defendant's use of MES was improper. Plaintiff simply does not have enough support for its arguments. The Court fails to see how the fact that MES tracks the results of its medical opinions leads to a conclusion that it is biased. Nor does the absence of draft documents or the use of an electronic signatures lead to a conclusion of bias. As to the deposition testimony, Plaintiff offers no justification for offering the deposition testimony of a witness in an unrelated case, between entirely different parties, where Defendant had no opportunity to depose the witness. The deposition testimony is hearsay and the Court declines to assign it any weight.

In sum, Plaintiff's arguments are speculative and conclusory. In the absence of any evidence that Defendant's contracts with MES were dependent on the outcome of the medical opinions provided by the consulting physicians, this Court declines to draw an inference of nefarious or improper behavior. See, e.g., McCloud v. Hartford Life & Acc. Ins. Co., 910 F.

17 - OPINION & ORDER

Supp. 2d 1226, 1230-31 (D. Or. 2012) (holding that the "bare fact" that an insurer paid for file reviews was insufficient to find that it abused its discretion).

### c. Consultant Dr. Hart

Plaintiff contends that Defendant's reliance on the opinion of independent contractor John Hart, D.O. suggests that Defendant allowed its financial bias to "infect" the claims process. In support of this argument, Plaintiff submits three contracts which she alleges are representative of what Dr. Hart's contract with Defendant must have been. Accordingly to Plaintiff, a section of the contract regarding Defendant's "Right of Supervision and Review" supports the conclusion that Dr. Hart's opinions are tailored to Defendant's desired finding of non-disability.

Plaintiff's argument is without merit. First, Plaintiff provides no support for the assertion that these three contracts, which were executed in 2007 and 2008 with other physicians, contain the same terms and conditions as the agreement Defendant entered into with Dr. Hart five or six years later. Second, even if Plaintiff could prove that the contracts imposed the same terms as those imposed on Dr. Hart, nothing about the language of the contracts suggests any pressure for Dr. Hart to reach a specific conclusion.

### d. Exclusion of evidence

Plaintiff argues that Defendant knowingly excluded relevant documentation in violation of Department of Labor claim regulations. Specifically, Plaintiff contends that Defendant failed to include in the claim file any of its MES statistical reports, draft disability reviews, and related documents. Plaintiff asks the Court to speculate that the omitted evidence was favorable to Plaintiff; in other words, that draft reports supported Plaintiff's ongoing disability but were subsequently altered to support Defendant's claim denial decision. Plaintiff provides no support

for its theory and, therefore, the Court declines Plaintiff's invitation to speculate as to what a

draft report or disability review might have said.

**III.     Plaintiff Provided Proof of Ongoing Disability.**

    Plaintiff bears the burden of proving ongoing disability and entitlement to LTD benefits.

AR 00031, 00380-81, 00384. Nevertheless, where an insurer has previously found a claimant to

be disabled (and the insurer is not asserting that the initial determination was erroneous), the

insurer's change in position requires some rational explanation. <u>See</u> <u>Saffon v. Wells Fargo & Co.</u>

<u>Long Term Disability Plan</u>, 522 F.3d 863, 871 (9th Cir. 2008); <u>see also</u> <u>McOsker v. Paul Revere</u>

<u>Life Ins. Co.</u>, 279 F.3d 586, 589 (8th Cir. 2002) ("We are not suggesting that paying benefits

operates forever as an estoppel so that an insurer can never change its mind; but unless

information available to an insurer alters in some significant way, the previous payment of

benefits is a circumstance that must weigh against the propriety of an insurer's decision to

discontinue those payments."). In this District, Judge Brown explained the interplay between

each party's burdens in the following way:

> Defendants here need not establish Plaintiff's condition improved or substantially
> changed in order for Defendants to continue to evaluate Plaintiff's eligibility for ongoing
> benefits under the LTD plan and, if warranted, to decide to terminate those benefits based
> on the record as a whole. Nevertheless, when determining whether Defendants abused
> their discretion in terminating Plaintiff's benefits, the Court necessarily will consider the
> record as a whole including whether Plaintiff's condition improved or substantially
> changed between the time Defendants initially deemed her eligible for benefits and the
> time Defendants reversed their decision.

<u>Torres v. Reliance Standard Life Ins. Co.</u>, No. 07-CV-202-BR, 2010 WL 276074, at *8 (D. Or.

Jan. 15, 2010).

    The record reflects that Plaintiff's treating physicians confirmed her disability from the

time of Plaintiff's claim for benefits throughout Defendant's award of LTD benefits and

subsequent termination and denial of Plaintiff's appeal. Each of Plaintiff's treating physicians

19 - OPINION & ORDER

and medical providers concluded that Plaintiff was disabled. The only provider who met with

Plaintiff in person and did not conclude she was disabled was physical therapist Ms. Gunn, who

conducted Plaintiff's FCE on December 2, 2013. AR 00493.

## IV.    Defendant's Review of Plaintiff's Claim was Unreasonable.

Although the insured carries the burden of showing she is entitled to benefits, ERISA

administrators have a fiduciary duty to conduct an adequate investigation when considering a

claim for benefits. Cady v. Hartford Life & Accidental Ins. Co., 930 F.Supp.2d 1216, 1226 (D.

Idaho 2013) (citing Booton v. Lockheed Med. Ben. Plan, 110 F.3d 1461, 1463 (9th Cir. 1997)).

"This requires that the plan administrator engage in 'meaningful dialogue' with the beneficiary.

If the administrator 'believes more information is needed to make a reasoned decision, they must

ask for it.'" Cady, 930 F.Supp.2d at 1226 (quoting Booton, 110 F.3d at 1463). A plan

administrator may not "shut [its] eyes to readily available information when the evidence in the

record suggests that the information might confirm the beneficiary's theory of entitlement."

Rodgers v. Metropolitan Life Ins. Co., 655 F.Supp.2d 1081, 1087 (N.D. Cal. 2009) (citations

omitted); see also Petrusich v. Unum Life Ins. Co. of Am., 984 F. Supp. 2d 1112, 1119-20 (D.

Or. 2013).

### a.    Defendant relied on a paper review of Plaintiff's existing medical records.

Plaintiff contends that Defendant abused its discretion because it conducted only a "paper

review" of her file and failed to conduct an independent medical examination (IME). A plan

administrator is not required to examine the claimant. Kushner v. Lehigh Cement Co., 572

F.Supp.2d 1182, 1192 (C.D. Cal. 2008) ("ERISA also does not require that an insurer seek

independent medical examinations."). Nevertheless, one factor that courts consider when

determining if a plan administrator abused its discretion, particularly in cases where the

administrator has a conflict of interest, is whether the plan administrator conducted only a paper review of the claimant's file. See Salomaa, 642 F.3d at 676 ("An insurance company may choose to avoid an independent medical examination because of the risk that the physicians it employs may conclude that the claimant is entitled to benefits. The skepticism we are required to apply because of the plan's conflict of interests requires us to consider this possibility in this case."); see also Montour, 588 F.3d at 630 ("Other factors that frequently arise in the ERISA context include . . . whether the plan administrator subjected the claimant to an in-person medical evaluation or relied instead on a paper review of the claimant's existing medical records."); Calvert v. Firstar Fin., Inc., 409 F.3d 286, 295 (6th Cir. 2005) ("We find that the failure to conduct a physical examination . . . may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination.").

In Salomaa, the claimant's treating physicians opined he was disabled. The plan administrator conducted only a paper review and did not have the claimant examined. 642 F.3d at 676 ("The only documents with an 'M.D.' on the signature line concluding that he was not disabled were by the physicians the insurance company paid to review his file. They never saw [the claimant]."). The Ninth Circuit held the plan administrator abused its discretion when it denied the claim in part as the result of failing to have the claimant examined. Id. at 676, 680–81.

As noted, it is undisputed that Defendant has a structural conflict in this case because it acts as both the funding source and the plan administrator. It is also undisputed that Defendant did not conduct an IME of Plaintiff even after Plaintiff appealed Defendant's initial termination of Plaintiff's benefits. Instead, Defendant based its decision to deny Plaintiff disability benefits

based on paper reviews by Dr. Hart, Dr. Rim, and Dr. Dubois.[7] In other words, Defendant hired doctors to review Plaintiff's files rather than conduct an in-person medical evaluation of her.

Given that Plaintiff's lumbar and degenerative findings are not in dispute, Defendant's decision that Plaintiff was no longer disabled was based upon a subjective opinion regarding the severity of Plaintiff's pain, notwithstanding the fact that the treating providers who had an ongoing relationship with Plaintiff found that her pain was disabling. For example, Dr. Branch wrote that Plaintiff's chronic low back pain presented a barrier to returning to work. AR 00488. Dr. Marion stated: "It is my medical opinion that [Plaintiff] is unable to work due to low back pain with radiation." AR 00502. NP Renpass wrote a letter on behalf of herself and Dr. Branch that stated that Plaintiff was "unable to sit, stand or walk for extended periods of time" and "[i]t is our medical opinion that she is unable to work and we continue to recommend she pursue long term disability." AR 00509.

While Defendant, as a plan administrator, is not required under ERISA to seek an IME, there are circumstances under which a plan administrator should conduct an IME. See, e.g., Petrusich v. Unum Life Ins. Co. of Am., 984 F. Supp. 2d 1112, 1123 (D. Or. 2013). This is a case where an IME could have helped to determine the credibility of Plaintiff's assertion of pain. Defendant chose not to exercise this option and, instead, relied on a paper review of Plaintiff's file (which was incomplete, as noted below). Under the circumstances, Defendant had a fiduciary duty to engage in a meaningful dialogue with Plaintiff and to request an IME or whatever additional evidence it deemed necessary to confirm or to deny Plaintiff's assertion of disability. Defendant's failure to do so weighs in favor of finding an abuse of discretion.

---

[7] Dr. Dubois provided a psychiatric opinion which did not have any significant impact one way or another in this case because Plaintiff never declared disability based on a mental disorder.

**b.  Defendant failed to fully consider a contrary SSA disability determination.**

Defendant's failure to explain the Social Security Administration (SSA) decision that found Plaintiff disabled also weighs against the propriety of its decision to terminate benefits. The failure to provide a full explanation for the difference between the SSA's finding of disability and an ERISA plan administrator's finding of non-disability is not a reversible error *per se*. Salz v. Standard Ins. Co., 554 F. App'x 600, 602 (9th Cir. 2014). However, the failure to meaningfully evaluate a social security disability award is a "significant error that the district court must appropriately weigh in determining whether a plan administrator abused its discretion." Id.

Here, the LTD policy requires Plaintiff to apply for Social Security disability benefits from the SSA and, if denied, to exhaust all possible appeals. AR 00131. Defendant emphasized this requirement to Plaintiff in its initial award letter and then again in a separate letter the following month. AR 00117, 00131. Plaintiff followed Defendant's instructions and applied for Social Security benefits.[8]

On June 2, 2013, the SSA concluded that Plaintiff was disabled and awarded her disability benefits retroactively to July 2011. AR 00328. Plaintiff appears to have followed Defendant's instructions to inform Defendant of the award, because Defendant proceeded to seek a reimbursement for payments it made to Plaintiff that overlapped with retroactive SSA payments. AR 00306. Defendant received a lump sum payment of $14,463. Id. Plaintiff's future benefits under the LTD policy were also reduced dollar-for-dollar by the amount Plaintiff would receive through her Social Security benefits. Id.

While Defendant benefitted from Plaintiff's receipt of Social Security benefits, Defendant failed to consider the SSA decision letter in its own review of Plaintiff's benefits. Nor

---

[8] Defendant provided Plaintiff with the services of Allsup Inc. to pursue the disability claim with the SSA.

did it provide the decision letter to any of its consulting physicians for their file reviews. In short, eagerly accepted the outcome of the SSA's determination but turned a blind eye to the reasons behind that determination.

Now, Defendant attempts to blame Plaintiff for failing to provide Defendant with the SSA's full medical and vocational findings, as opposed to just the "Notice of Award." This Court is unpersuaded. Defendant never asked Plaintiff for the SSA's decision letter or full medical and vocational findings. Given Defendant's status as an insurance company, there is no question that Defendant knew such a decision must exist, yet Defendant never informed Plaintiff that she should obtain a copy and provide it to Defendant. To the extent that the SSA's decision or the underlying administrative record would have facilitated Defendant's review, Defendant was required to indicate as much in its initial termination letter. Montour, 588 F.3d at 637; see also Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 871 (9th Cir. 2008) (claims administrator must tell claimant if additional information is necessary to evaluate her claim at a time when the claimant still has "a fair chance to present evidence on this point").

Furthermore, Defendant could have obtained the SSA decision letter on its own. Plaintiff provided Defendant with a signed release form to obtain her medical and Social Security files, AR 00304, and a "Consent for Release of Information" form specific to Plaintiff's Social Security records, AR 00302. Therefore, any argument that Defendant did not have the ability to obtain such information itself is unavailing. As in Sterio v. HM Life, 369 F. App'x 801, 804 (9th Cir. 2010), Defendant's failure to procure the SSA file or ask Plaintiff to do so weighs in favor of a finding that Defendant abused its discretion in denying Plaintiff benefits.[9]

---

[9] While this Court's review is limited to the Administrative Record, by way of example, if Defendant had considered the SSA decision letter it would have been aware of a Physical Capacities Evaluation conducted by Dr. Marion on March 1, 2013 that contradicts Ms. Gunn's FCE. Pl.'s Mot. Ex. 5, ECF 31-5. Defendant would have also been aware of the SSA Senior Attorney Advisor's opinion that Plaintiff

Defendant chose instead to proceed with its review of Plaintiff's case without the benefit of the SSA decision letter, even though it had been issued just four months earlier. Defendant concluded that Plaintiff was no longer disabled as defined by the LTD policy. AR 00056. Notably, there was no additional medical evidence that Defendant considered in its October 18, 2013 determination that was not also considered by the SSA in reaching its conclusion.

In the letter to Plaintiff revoking her LTD benefits, Defendant explained that it was aware that Plaintiff was receiving Social Security Disability:

> However, the fact that you have been awarded these other benefits in and of itself does not entitle you to LTD benefits. The Social Security Administration (SSA) relies on their program's regulations for determining entitlement to their benefits. In addition to your functional capacity, SSA may rely on factors unique to their program as key criteria for determining eligibility for benefits.

> It is our understanding that SSA reviews claims for ongoing eligibility no more frequently than once every three years. Standard evaluates claims on an ongoing basis to ensure you meet all applicable policy provisions. **Based on the information in your file we have determined that your condition has improved.** As described above we have conducted a thorough review and determined your condition would allow you to perform sedentary level work activity on a reasonably continuous basis.

AR 00059 (emphasis added).

Defendant's explanation appears to suggest that, while the SSA found Plaintiff disabled on June 2, 2013, new information allowed Defendant to determine that Plaintiff's "condition had improved." However, in the same letter, Defendant admits that the last record it had to review was dated March 5, 2013. AR 00058. Therefore, Defendant's explanation for disregarding the SSA opinion could not possibly be true.

In its Response brief, Defendant argues that the SSA decision-maker did not have the benefit of Ms. Gunn's December 2013 Functional Capacity Evaluation, the evaluations of Drs.

---

retained the residual functional capacity to stand/walk a total of two hours in an eight hour workday, and sit a total of four hours, but "must be allowed to frequently alternate between sitting and standing at will through the workday, and must be allowed unscheduled work breaks due to back pain." Pl.'s Mot. Ex. 6 at 6, ECF 31-6.

Rim and Hart, or subsequent clinical examinations reflecting improvement in Plaintiff's condition. As an initial matter, the Court is unsure which "subsequent clinical examinations" Defendant refers to. Additionally, Defendant's decision letter revoking Plaintiff's benefits was issued before the FCE or Dr. Rim's evaluation; therefore, that evidence could not possibly explain the difference in outcomes. As to Dr. Hart, as discussed below, he relied on the same evidence as the SSA in reaching his recommendation. Dr. Hart did not review the SSA opinion. In addition, Dr. Hart did not explain why he believed that Plaintiff was not disabled, he just stated in a conclusory manner that she had no limitations or restrictions. AR 00516. Nor did Defendant's letter explain why it found Dr. Hart's conclusions more persuasive than those of the SSA.

Further evidence of Defendant's disregard of the SSA decision is the fact that the letter denying Plaintiff's appeal does not even mention the SSA decision. Salomaa, 642 F.3d at 679 ("Evidence of a Social Security award of disability benefits is of sufficient significance that failure to address it offers support that the plan administrator's denial was arbitrary, an abuse of discretion. Weighty evidence may ultimately be unpersuasive, but it cannot be ignored.").

Defendant does not articulate any other reason for reaching a different conclusion than the SSA. Defendant's statement in its initial denial letter that SSA's criteria for determining eligibility for benefits may differ from Defendant's does not provide Plaintiff with any meaningful understanding for why Defendant rejected the SSA determination or how Plaintiff could supplement the record on appeal. "Ordinarily, a proper acknowledgment of a contrary SSA disability determination would entail comparing and contrasting not just the definitions employed but also the medical evidence upon which the decision-makers relied." Montour, 588 F.3d at 635. As the Ninth Circuit has explained:

> While ERISA plan administrators are not bound by the SSA's determination, complete disregard for a contrary conclusion without so much as an explanation raises questions about whether an adverse benefits determination was the product of a principled and deliberative reasoning process. In fact, not distinguishing the SSA's contrary conclusion may indicate a failure to consider relevant evidence.

Id. at 636 (internal citations and quotations omitted).

In sum, Defendant's failure to adequately consider the SSA decision weighs in favor of a finding of abuse of discretion. As in Montour, Defendant required Plaintiff to apply for Social Security benefits, the Social Security award was issued before the plan administrator terminated Plaintiff's LTD benefits, and Defendant had previously found the plaintiff disabled and paid her benefits for over a year before deciding without any evidence of an improvement on plaintiff's part that she was no longer disabled. 588 F.3d at 637. As in Montour, all of these facts are probative of bias. See also Dimery v. Reliance Standard Life Ins. Co., No. C 10-00481 JSW, 2012 WL 1067409, at *15 (N.D. Cal. Mar. 28, 2012) aff'd, 597 F. App'x 408 (9th Cir. 2015).

**c. Defendant failed to provide its independent experts with all of the relevant evidence.**

In Montour, the Ninth Circuit found that the decision to solely conduct a paper review raised "questions about the thoroughness and accuracy of the benefits determination," especially where it was not clear that the reviewing doctors had been presented with all of the relevant evidence. 588 F.3d at 634 (internal quotation marks and alterations omitted).

In the present case, Dr. Hart mentions in his August 8, 2013 memorandum that Plaintiff has been approved for social security benefits. 00569. However, Dr. Hart makes no mention of Plaintiff's SSA benefits in his October 10, 2013 memorandum. AR 00515. Dr. Rim notes that Plaintiff was seeking disability benefits as of April 18, 2013, but has no other notation or acknowledgement that Plaintiff was approved for benefits and determined to be disabled. AR 00444. Dr. Dubois makes no mention of social security benefits. AR 00454. Importantly, none of

27 - OPINION & ORDER

the three consulting doctors list the SSA award letter or the "Fully Favorable Decision" as a document they reviewed as part of their paper review. The Court finds no indication that any of the three doctors were given the SSA's decision to consider, even to discount or disagree with it.

The SSA decision is particularly notable in that it relies heavily upon an FCE performed by Dr. Marion on March 1, 2013. None of the consulting physicians, therefore, had the knowledge of the reasoning behind the SSA decision. To the extent that Defendant failed to provide the underlying SSA decision, that failure is addressed above. To the extent the Defendant failed to even provide notice that SSA disability benefits were awarded, this factor also weighs in favor of finding abuse of discretion.

**d. Defendant based its decision on an unreliable Functional Capacity Evaluation.**

Plaintiff contends that the FCE conducted by Ms. Gunn on December 2, 2013, after Defendant had already terminated Plaintiff's benefits, should be afforded little weight. The Court agrees.

First, it is obvious that the FCE played no role in Defendant's initial determination that Plaintiff was no longer disabled, given that it occurred two months after Defendant issued its denial letter. Second, the FCE was conducted in only 88 minutes. Nothing in the FCE report explains how the results of the testing translate into the ability to work at a sedentary level on a sustained basis. The absence of such an explanation is particularly notable because Plaintiff's own reports emphasized her inability to sit or stand for long periods of time. In addition, other courts have found similarly short examinations inadequate in determining if a person is capable of performing sedentary work in an 8-hour workday or a 40-hour workweek. For example, in Stup v. UNUM Life Ins. Co. of America, 390 F.3d 301, 309 (4th Cir. 2004), the Court concluded in a fibromyalgia-based disability case that the FCE results did not provide substantial evidence

of an ability to do sedentary work because "the FCE lasted only two and a half hours, so the FCE test results do not necessarily indicate Stup's ability to perform sedentary work for an eight (or even four) hour workday, five days a week. Even if the results of the FCE had shown conclusively that Stup could perform sedentary tasks for the duration of the test, . . . those results provide no evidence as to her abilities for a longer period."

Third, Ms. Gunn's conclusion that Plaintiff can perform sedentary work, which requires "constant" sitting, is not supported by the results of the FCE. Ms. Gunn concluded in part that Plaintiff could only sit "occasionally," which is defined by the SSA as generally not more than about 2 hours of an 8-hour workday. AR 00494. Since sedentary work, as defined by the DOL's Dictionary of Occupational Titles, "involves sitting most of the time," see Brigham v. Sun Life of Canada, 317 F.3d 72, 78 (1st Cir. 2003) (setting forth the definition of sedentary work in the Dictionary of Occupational Titles), courts have concluded that even a four-hour sitting tolerance is insufficient to render one capable of performing sedentary work. See Connors v. Connecticut General Life Ins. Co., 272 F.3d 127, 136 n. 5 (2nd Cir. 2001) (Court, in vacating a judgment denying ERISA disability benefits under an "any occupation" policy, noted that the "ability to sit for a total of four hours does not generally satisfy the standard for sedentary work."); accord, Brooking v. Hartford Life & Accident Ins. Co., 167 Fed. App'x. 544, 548–49 (6th Cir. 2006) (Court, in concluding in an ERISA disability case that the plaintiff was entitled to long-term disability benefits, determined that the plaintiff's inability to sit for more than four hours during an eight-hour day rendered her incapable of performing sedentary work.); Alfano v. CIGNA Life Ins. Co. of New York, 2009 WL 222351, at *18 (S.D.N.Y. Jan. 30, 2009) (Court noted in an ERISA disability case that a sitting tolerance of "6 hours per day [is] generally recognized as the minimum tolerance required for sedentary work" under the DOL's definition.).

Defendant argues that the discrepancy between the sitting requirement for a sedentary occupation and the FCE's finding as to Plaintiff's ability to sit reflects Plaintiff's attempt to manipulate the testing results, not an error in the FCE's conclusion. Such an explanation for the discrepancy, however, is speculative. The Court is unable to tell whether Ms. Gunn erred in the FCE and, if so, in what way. Because this issue is critical in determining whether Plaintiff can perform sedentary work, the Court assigns the FCE little weight and is not persuaded by Defendant's reliance on the FCE in its denial letter.

**VIII.    The Court Orders an Award of Reinstatement of Benefits.**

Defendant owed a fiduciary duty to Plaintiff under ERISA. The Supreme Court has described that duty as follows:

> [A plan administrator's] fiduciary responsibility under ERISA is simply stated. The statute provides that fiduciaries shall discharge their duties with respect to a plan "solely in the interest of the participants and beneficiaries," [29 U.S.C.] § 1104(a)(1), that is, "for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan," § 1104(a)(1)(A).

Pegram v. Herdrich, 530 U.S. 211, 223–24, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). Fiduciaries must discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." Id. at 224 n. 6, 120 S.Ct. 2143 (quoting 29 U.S.C. § 1104(a)(1)(B)).

"Remand to the plan administrator is appropriate where that administrator has 'construe[d] a plan provision erroneously' and therefore has 'not yet had the opportunity of applying the [p]lan, properly construed, to [a claimant's] application for benefits.'" Canseco v. Constr. Laborers Pension Trust, 93 F.3d 600, 609 (9th Cir. 1996) (quoting Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan, 85 F.3d 455, 461 (9th Cir.

1996)). In cases where the plan administrator has abused its discretion when denying a claim for disability that was supported by the record, however, courts have ordered payment of benefits on the ground that the administrator should not be given a second chance. See, e.g., Cooper v. Life Ins. Co. of No. Amer., 486 F.3d 157, 172 (6th Cir. 2007) ("Plan administrators should not be given two bites at the proverbial apple where the claimant is clearly entitled to disability benefits. They need to properly and fairly evaluate the claim the first time around."). In Fleet v. Independent Federal Credit Union the district court stated:

> If the procedure were to become routine, it would pose a serious risk of simply allowing 'Mulligans' to sloppy plan administrators—at the expense of both the courts and plan participants and beneficiaries .... "It would be a terribly unfair and inefficient use of judicial resources to continue remanding a case to [the plan administrator] to dig up new evidence until it found just the right support for its decision to deny an employee her benefits."

No. 1:04CV0507DFHTAB, 2005 WL 1183177, at *3 (S.D. Ind. May 18, 2005) (quoting Dabertin v. HCR Manor Care, Inc., 373 F.3d 822, 832 (7th Cir. 2004)).

The situation here is not one in which the Plan Administrator failed to apply the plan provisions properly. Instead, as noted, even under the most deferential abuse-of-discretion standard of review, Defendant's denial of Plaintiff's claim is the result of the failure to conduct an independent medical examination, the failure to fully consider a contrary SSA determination, the failure to provide Defendant's independent experts with all of the relevant evidence, and the unjustified reliance on an unreasonable Functional Capacity Evaluation. Defendant fell far short of fulfilling its fiduciary duty to Plaintiff. The Court, therefore, concludes it should not permit Defendant to have another "bite at the apple" and that an award of reinstatement of benefits is appropriate.

## CONCLUSION

The Court grants Plaintiff's Motion for Summary Judgment [31] and orders judgment in favor of Plaintiff for a reinstatement of benefits. Plaintiff shall prepare an appropriate Judgment consistent with this Opinion and, after conferring with Defendant, shall submit it to the Court for signature within 10 days of the date below.

IT IS SO ORDERED.

Dated this _____ 30 _____ day of _____ September _____, 2015.


_____

MARCO A. HERNÁNDEZ
United States District Judge